**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

**BEHAVIORAL SUPPORT**
**SERVICES, INC.**

    Debtor.

**CASE NO. 6:15-bk-04855-KSJ**

**CHAPTER 11**

_____

**FIRST AMENDED CHAPTER 11 PLAN**
**OF REORGANIZATION**
**SUBMITTED BY**
**BEHAVIORAL SUPPORT SERVICES, INC.**

COUNSEL FOR DEBTOR

ELIZABETH A. GREEN
TIFFANY D. PAYNE
BAKER & HOSTETLER LLP
200 S. ORANGE AVE.
SUNTRUST CENTER, SUITE 2300
ORLANDO, FLORIDA, 32801-3432

April 22, 2016

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:

                         **CASE NO. 6:15-bk-04855-KSJ**

**BEHAVIORAL SUPPORT**
**SERVICES, INC.**                  **CHAPTER 11**

           **Debtor.**

_____

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**SUBMITTED BY**
**BEHAVIORAL SUPPORT SERVICES, INC.**

    **BEHAVIORAL SUPPORT SERVICES, INC.** ("BSS" or "Debtor"), hereby proposes

the following plan of reorganization (the "Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C.

§101, *et seq.*

## ARTICLE I. - DEFINITIONS.

    For the purpose of the Plan, the following terms will have the meanings set forth below:

    **Administrative Claim** shall mean a Claim for payment of an administrative expense of

a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of

the Code, including without limitation, the actual, necessary costs and expenses incurred after

the commencement of the Bankruptcy Case, of preserving the Debtor's estate and operating the

business of the Debtor, including wages, salaries or commissions for services, compensation for

legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331

of the Code and all fees and charges assessed against the Estate under Chapter 123 of Title 28,

United States Code.

    **Administrative Claims Bar Date** shall mean the date by which all Administrative

Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar

Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by the Debtor with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes, pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court,

608758062.1

an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean the bankruptcy case of the Debtor, which is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtor's Bankruptcy Case is pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the estate, created pursuant to Section 541 of the Code, by the commencement of the Debtor's Bankruptcy Case and shall include all property of the estate as defined in Section 541 of the Code.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

**BSS** shall mean Behavioral Support Services, Inc.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean the following actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105 and 502 and Sections 544-554 (or equivalent provisions of applicable non-bankruptcy laws).

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured. unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right

to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Compromise Motion** shall mean that motion to approve compromises of controversies (Doc. No. 149) filed in the Bankruptcy Case on February 2, 2016.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtor.

**Creditor** shall have the same meaning as set forth in Section 101(10) of the Code.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtor** shall mean Behavioral Support Services, Inc.

**Direct Distribution** shall mean any distribution on account of Class IV shareholder Interests in the Debtor *other than* any discretionary distribution made directly by BSS to the Internal Revenue Service, on account of the Shareholders' personal federal income tax

obligations (excluding any penalties and interest) for tax attributable to or derived from BSS and passed through to the Shareholders for the tax years 2011 – 2015 as any such distributions may be made *after* the Effective Date of the Plan and *after* Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Class 1, 2, and 3 Claims are satisfied pursuant to the Plan.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against the Debtor which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim, which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the Holders of Allowed Claims.

**Douglas Building** shall mean the property located at 801 Douglas Avenue, Altamonte Springs, Florida, 32714

**Effective Date** shall mean a date within thirty (30) days after the Bankruptcy Court has entered the Confirmation Order; *provided, however,* that the Effective Date shall not occur until any preconditions to the occurrence of the Effective Date set forth in the Plan have been met unless waived by the Debtor. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur at any time within thirty (30) days after the entry of the Confirmation Order provided that Debtor files a notice setting forth the Effective Date with the Bankruptcy Court.

608758062.1

**Estate Assets** shall mean all the assets, property, and cash of the Debtor, as defined in section 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtor, if an appeal is filed and no stay has been entered.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests which are impaired within the meaning of Section 1124 of the Code.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, membership interest, or other equity instruments in the Debtor.

**Joint Action** shall mean that Joint Action by Unanimous Written Consent of the sole shareholder and the Board of Directors of Behavioral Support Services, Incorporated, dated May 28, 2015 as attached to the Disclosure Statement as Exhibit A.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent

that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor, or any other party with standing to bring such a challenge.

**MCO(s)** shall mean Florida Medicaid managed care organization(s) and fiscal intermediaries, including those on Schedule F (Doc. No. 132 in the Bankruptcy Case).

**Medicaid** shall mean that certain program of medical assistance, funded jointly by the federal government and the states, for impoverished individuals who are aged, blind and/or disabled, and/or members of families with dependent children, which program is more fully described in Title XIX of the Social Security Act (42 U.S.C. §§ 1396 *et seq.*) and the regulations promulgated thereunder.

**MFCU** shall mean the State of Florida's Medicaid Fraud Control Unit of the Office of the Attorney General as defined in 42 U.S.C. § 1396(b).

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean June 2, 2015, the date on which the Debtor filed a voluntary petition for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Debtor pursuant to the terms of the Plan including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

608758062.1

**Settlement Agreement** shall mean that agreement by and between BSS and the MFCU attached to the Disclosure Statement as Exhibit D which Settlement Agreement, if the Plan is confirmed, shall become effective and supply the basis and agreed amount of the Allowed Class II Unsecured Claim.

**Shareholders** shall mean Doris Duan Young and Samuel Young.

**Shareholder Liabilities** shall mean the collective liabilities of the Shareholders consisting of the difference between the value of the property the Shareholders were ordered to return to the Debtor pursuant to the 9019 Order and the value of the property the Shareholders actually returned to the Debtor.

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

**Turnover Order** shall mean that order entered in the Bankruptcy Case on August 18, 2015 (Doc. No. 102) granting a motion (Doc. No. 81) agreed to by the Shareholders for a consensual turnover of a Charles Schwab account valued at approximately $3 million.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtor unclaimed for a period of six (6) months after any Distribution.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**Unsecured Creditor** shall mean a creditor holding an Allowed Unsecured Claim.

608758062.1

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**9019 Order** shall mean that order entered on March 2, 2016 (Doc. No. 188) by the Bankruptcy Court approving the Compromise Motion.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-VIII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Class 1 – Priority Non-Tax Claims.

Class 1 consists of the Allowed Priority Non-Tax Claims.

B.    Class 2 - Allowed Unsecured Claim of the State of Florida, Office of Attorney General, Medicaid Fraud Control Unit (MFCU).

Class 2 consists of the Allowed Unsecured Claim of the MFCU.

C.    Class 3 - Convenience Claims - Allowed Unsecured Claims of Trade Creditors.

Class 3 consists of the Claims of Unsecured Trade Creditors who hold Allowed Claims.

D.    Class 4 – Interests.

Class 4 consists of the ownership interests in the Debtor.

## ARTICLE III. - ADMINISTRATIVE EXPENSES.

A.    Administrative Claims.

1.    Nonordinary Course Administrative Claims.

Any person, including any professional who has rendered services to the Debtor during the course of the Bankruptcy Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but

608758062.1

excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such a Holder engaged or employed by the Debtor shall bar such a claimant from seeking recovery on such Claim.

Except to the extent that the Holder and Debtor have agreed or may agree to a different treatment, each Holder of a Nonordinary Course Administrative Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash (unless otherwise ordered by the Bankruptcy Court) on or before the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, within thirty (30) days after the date the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court.

2.    Ordinary Course Administrative Claims.

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

608758062.1

B.      Priority Tax Claims.

Except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment, on the later of the Effective Date or the date that such Priority Tax Claim becomes an Allowed Claim, the Holder of such Allowed Priority Tax Claim shall receive cash from the Debtor or the Reorganized Debtor, as the case may be, in an amount equal to such Allowed Claim.  Such payments will be in full satisfaction of the Allowed Priority Tax Claim. The IRS filed a Priority Tax Claim in the amount of $37,790.73.

## ARTICLE IV. - TREATMENT OF UNIMPAIRED CLASSES.

Classes 1 and 3 are Unimpaired. The treatment for each Class is as follows:

A.      Class 1 - Priority Non-Tax Claims.

The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  In full and final satisfaction of the Class 1 Priority Non-Tax Claims, Holders of such Claims shall receive payment equal to one hundred percent (100%) of such Holder's Claim on the later of the Effective Date of the Plan or within thirty (30) days after such Claim becomes an Allowed Claim.  To the extent such Claims exist, the Priority Non-Tax Claims are unimpaired and, as such, are not entitled to vote on the Plan.

B.      Class 3 – Convenience Claims - Allowed Unsecured Claims of Trade Creditors.

Class 3 consists of Allowed Unsecured Claims of the Debtor's Trade Creditors. In full and final satisfaction of each Allowed Unsecured Class 3 Claim, each Holder of an Allowed Unsecured Class 3 Claim shall be paid in full on the later of the Effective Date or within thirty (30) days after such Claim becomes an Allowed Claim. Such payment will be in full satisfaction of the Allowed Class 3 Claim. The Class 3 Claim is unimpaired and, as such, the Holders of Allowed Class 3 Unsecured Claims are not entitled to vote on the Plan.

# ARTICLE V. - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

A.    Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.    Class 2- Allowed Unsecured Claim of the State of Florida, Office of Attorney General, Medicaid Fraud Control Unit.

Class 2 consists of the Allowed Unsecured Claim of the State of Florida, Office of Attorney General, Medicaid Fraud Control Unit ("MFCU") in the amount of $3,413,978 in connection with overpayments received under title XVIII or XIX of the Social Security Act which overpayments must be returned.  42 U.S.C. § 1320a-7k(d)(4)(B). The overpayments are reflected in Schedule F (Doc. No. 132), and also include an additional amount of $990,145, bringing the total amount owing to $3,413,978. Pursuant to 42 U.S.C. § 1396b(q)(5), MFCU is the party in interest with standing to resolve these overpayments, as defined in 42 U.S.C. § 1320a-7k(d)(4)(B), including any Claim or Claims of MCOs.

Pursuant to the Settlement Agreement (*attached to the Disclosure Statement as Exhibit D*), in full and final satisfaction of MFCU's Allowed Unsecured Claim, as such is reflected in Schedule F (Doc. No. 132) and as such includes $990,145 due to WellCare, MFCU

shall receive $2,701,881.00 on the Effective Date of the Plan. Such payment will be in full satisfaction of the Allowed Class 2 Unsecured Claim. The Class 2 Unsecured Claim is impaired and, as such, the Holder of the Allowed Class 2 Unsecured Claim, MFCU, is entitled to vote on the Plan.

      C.     <u>Class 4 – Interests</u>.

      Class IV consists of the Shareholders' collective Interests in the Debtor.  In order to facilitate the Plan and the Reorganized Debtor's continuing existence and to secure repayment of Shareholder Liabilities owing pursuant to the 9019 Order, the Shareholders' have pledged and assigned all of their Interests in BSS, consisting of 100% of BSS's common stock, to Peter J. Perley for the benefit of the Reorganized Debtor. *See Exhibit E to Disclosure Statement.*

      Further, the Shareholders shall receive no Direct Distribution until after such time as Allowed: (i) Administrative Claims; (ii) Priority Tax Claims; and (iii) Class I, II, and III Claims are repaid pursuant to the Plan; *and* (iv) after Shareholder Liability to the Debtor under the 9019 Order is substantially satisfied, *and* until the earlier of (v) any sale of the operations and/or majority of the assets of the Debtor, or the Reorganized Debtor, as the case may be, or (vi) such time as the Shareholders' personal income tax obligations (excluding any penalties and interest) to the Internal Revenue Service for tax attributable to or derived from the Debtor and passed through to the Shareholders for the tax years 2011 – 2015 are satisfied.

      Because the Shareholders have pledged and assigned their Interests to secure the Shareholder Liability to the Debtor under the 9019 Order, the Class 4 Interests are impaired. As such, the Holders of Allowed Class 4 Interests are entitled to vote on the Plan.

## ARTICLE VI. - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

By and through this Plan, the Debtor specifically assumes the executory contracts and unexpired leases listed on **Exhibit "F"** to the Disclosure Statement.   Any executory contract or unexpired lease that is not: (i) subject to an order approving assumption; (ii) specifically sought to be assumed through this Plan; or (iii) subject to a pending motion to assume on or prior to seven (7) Business Days prior to the Confirmation Hearing, shall be deemed rejected as of the date that is seven (7) Business Days prior to the Confirmation Hearing. Unless otherwise agreed to between the Debtor and any party to a contract being assumed on **Exhibit "F"** to the Disclosure Statement prior to the entry of the Confirmation Order, the Debtor's payments to MFCU on account of its Allowed Class 2 Claim on the Effective Date shall constitute cure of any existing monetary defaults with respect to all assumed executory contracts.

To the extent the Debtor rejects or is deemed to reject any executory contract or unexpired lease, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 3 Claim except as otherwise provided herein.

## ARTICLE VII. - MEANS OF IMPLEMENTATION.

A.    <u>Business Operations and Cash Flow.</u>

The Debtor will continue operating its business under the control of Mr. Perley. The Debtor believes cash flow from revenues derived from treatment of existing and new patients combined with the funds received in connection with the Turnover Order (Doc. No. 102) and the 9019 Order (Doc. No. 188) will be sufficient to meet all operating expenses and required payments under the Plan as well as to sustain the Debtor's operations after the Effective Date and until the time of any future sale.

B.    Management and Control of the Debtor Post-Confirmation.

1.    Officers.    Peter. J. Perley will continue to serve as President, Secretary, Treasurer, and Registered Agent of the Reorganized Debtor after the Effective Date. Mr. Perley's title as Chief Restructuring Officer ("CRO") will change to Chief Executive Officer ("CEO") and Mr. Perley will receive a salary of $42,500 per month. As President and CEO of the Debtor, Mr. Perley is responsible for all aspects of the Debtor's operations up to and including any future sale of the business operations. In addition, and unless otherwise agreed to by Ross Johnston, Ross Johnston will continue to serve as sole director of the Reorganized Debtor until the earlier of the date that is three years from the Effective Date or until such time as the Reorganized Debtor's operations are sold, in absence of the limited extenuating circumstances described in the Voting Agreement attached to the Joint Action as attached to the Disclosure Statement as Exhibit A. Following confirmation, the Reorganized Debtor plans to explore options to form an advisory board of directors to focus on community services, outreach, clinical compliance and patient care.

2.    Equity in Reorganized Debtor.    In order to facilitate the Plan and the Reorganized Debtor's continuing existence and to secure repayment of Shareholder Liabilities owing pursuant to the 9019 Order, the Shareholders' have pledged and assigned all of their Interests in BSS, consisting of 100% of BSS's common stock, to Peter J. Perley for the benefit of the Reorganized Debtor. *See Exhibit E to Disclosure Statement.*

A.    Additional Provisions.

1.    Procedures for Resolving Disputed Claims.

a.    Prosecution of Objections to Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court

17

and served upon the Holders of each of the Claims and Equity Interests to which objections are made within ninety [90] days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

> b.    Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.      Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.      Disallowance of Certain Claims and Interests.

According to the Plan, all Claims held by Entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code and Holders of such Claims may not vote to accept or reject the Plan.

e.      Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

608758062.1

## ARTICLE VIII. — MISCELLANEOUS.

      A.        Effects of Confirmation.

        1.        Amendments to the Plan.

        The Debtor reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

        2.        Authority to Effectuate the Plan.

        Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided in the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with the Plan and the Code.

        3.        Post-Confirmation Status Report.

        Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtor will file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

        4.        Retention of Professionals.

        After the Effective Date, the Debtor may retain professionals on such terms as the Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Debtor.

B.      Conditions to Effectiveness.

The Effective Date shall not occur until all of the following conditions, unless any condition(s) is/are waived by the Debtor, are satisfied:

1.      The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor.

2.      Expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

3.      Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, except as set forth in Article V, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtor, or any property thereof, or against any of the Debtor's transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

4.      All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtor unless the Debtor has waived this requirement in writing.

5.      Upon the satisfaction or waiver of each of the foregoing conditions, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

C.    Discharge, Injunction, and Exculpation and Limitation of Liability.

1.    Discharge.

To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan or the Confirmation Order: (a) on the Effective Date the Confirmation Order shall operate as a discharge under 11 U.S.C. §1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Debtor, the Reorganized Debtor and all of the Debtor's property that arose before Confirmation, including without limitation, any monetary Claim(s) of governmental units that arose prior to the Petition Date, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether: (i) a proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to §502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted to accept or reject the Plan; and (b) from and after the Effective Date: (i) all Holders of Claims shall be barred and enjoined from asserting against the Debtor and/or the Reorganized Debtor and its property any Claims, Debts, Liens, Security Interests, set offs, recoupment rights, and encumbrances of and against all property of the Debtor's estate, and (ii) the Debtor and the Reorganized Debtor shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to §1141 of the Code.

2.    Injunction.

Except as set forth in the Plan, as part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security

Interests, Liens, setoff and/or recoupment rights, encumbrances, and/or other rights and Interest in, to or against the Debtor, the Reorganized Debtor, and/or the assets vesting in the Reorganized Debtor from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan), encumbrances, rights and Interests against the Debtor, Reorganized Debtor and/or the assets vesting in the Reorganized Debtor; provided, however, that such injunction shall not apply to any Claim asserted against the Reorganized Debtor by a claimant based upon a default by the Reorganized Debtor in performance of its obligations to the claimant under the Plan.

3.    Exculpation and Limitation of Liability.

*Neither the Debtor, its officers, directors, employees, affiliates, agents and representatives, specifically including but not limited to Mr. Peter J. Perley, Mr. Ross Johnston, and Ms. Katie Reeley (Director of Administration) shall have or incur any liability to any Holder of any Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, accountants, consultants, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the Debtor's restructuring, including, without limitation, the negotiation, implementation and execution of the Plan, the Bankruptcy Case, this Disclosure Statement and any and all Exhibits thereto, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan, except gross negligence, willful misconduct or fraud, each as*

*determined by a Final Order of the Bankruptcy Court, and, in all respects, shall be entitled to*

*rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

      D.    <u>Retention of Jurisdiction.</u>

          After the Effective Date, the Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

          1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

          2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Debtor in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

          3.    Any adversary proceedings or contested matters brought by the Debtor, including but not limited to the Causes of Action, the proceedings then pending or thereafter brought pursuant to Sections 544, 545, 547, 548, 549, and 550 of the Code;

          4.    All controversies and disputes arising under or in connection with the Plan;

          5.    The enforcement and interpretation of the provisions of the Plan;

608758062.1

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the property of the Estate from adverse claims or interference inconsistent with the Plan; and

11.     To ensure that Distributions are accomplished, as provided herein, and to resolve any dispute concerning the right of any person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E.      <u>Headings.</u>

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.      <u>Cramdown</u>.

The Debtor reserves the right to seek confirmation of the Plan under Section 1129(b) of the Code.

G.      <u>Regulatory Approval and Retirement Plans.</u>

It will not be necessary for the Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code.

608758062.1

H.  <u>Notices.</u>

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States Mail to the following:

> To Debtor:
>
> Peter J. Perley, President
> 801 Douglas Avenue
> Suite 208
> Altamonte Springs, FL 32714
>
> With copies to:
>
> Elizabeth A. Green, Esquire
> Tiffany D. Payne, Esquire
> Baker & Hostetler, LLP
> 200 S. Orange Avenue
> SunTrust Center, Suite 2300
> Orlando, Florida 32801-3432
> T: 407-649-4079
> F:407-841-0168
> EGreen@bakerlaw.com
> TPayne@bakerlaw.com

I.  <u>Manner of Payment.</u>

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Debtor.

J.  <u>Compliance with Tax Requirements.</u>

In connection with this Plan, to the extent applicable, the Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Debtor may withhold the entire

Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Debtor the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      K.    <u>Transmittal of Distributions to Parties Entitled Thereto.</u>

      All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

L.      <u>Distribution of Unclaimed Property.</u>

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Debtor.

M.      <u>Fractional Cents; Multiple Distributions.</u>

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as Unclaimed Property under the Plan.

N.      <u>Revocation and Withdrawal of this Plan.</u>

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

608758062.1

O.    <u>Modification of Plan.</u>

The Debtor may amend or modify this Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**RESPECTFULLY SUBMITTED** this 22nd day of April, 2016.

*/s/ Tiffany D. Payne*
Tiffany D. Payne, Esquire
Florida Bar No 0421448
tpayne@bakerlaw.com
BAKER & HOSTETLER, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
Attorney for the Debtor
Behavioral Support Services, Inc.

608758062.1